IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|                               |   |                            |
|-------------------------------|---|----------------------------|
|                               | * |                            |
| YURI J. STOYANOV,             |   |                            |
|                               | * |                            |
|     Plaintiff,                |   |                            |
|                               | * |                            |
|        v.                     |   | CIVIL NO.: WDQ-07-1764     |
|                               | * |                            |
| RAY MABUS, Secretary          |   |                            |
| of the Navy, *et al.*         | * |                            |
|                               |   |                            |
|     Defendants.               | * |                            |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

MEMORANDUM OPINION

Yuri J. Stoyanov, *pro se*, sued the Secretary of the Navy[1]

and others[2] for violations of Title VII of the Civil Rights Act

of 1964,[3] the Age Discrimination in Employment Act of 1967

---

[1]   On June 18, 2009, Ray Mabus replaced Donald Winter as Secretary of the Navy.  Under Fed. R. Civ. P. 25(d), Mabus was substituted as the defendant.

[2]   Including in their individual and official capacities: (1) Charles Behrle, Head of the Carderock Division, Naval Surface Warfare Center ("NSWC"); (2) Gary Jebsen, Head of Code 70, Carderock Division, NSWC; (3) Gerald Smith, Deputy Head of Code 70, Carderock Division, NSWC; (4) Kevin Wilson, Head of Code 74, Carderock Division, NSWC; (5) John Davies, Deputy Head of Code 74, Carderock Division, NSWC; (6) Bruce Crock, Head of Code 74, Carderock Division, NSWC; (7) Paul Shang, Head of Code 72, Carderock Division, NSWC; (8) Mathew Craun, Head of Code 722, Carderock Division, NSWC; (9) M. Kathleen Fowler, Administrative Officer Code 709, Carderock Division, NSWC; (10) David Caron, Assistant Counsel Code 39, Carderock Division, NSWC; and (11) Karen Evanish, Human Resources Specialist.

[3]   42 U.S.C. §§ 2000e *et seq.*

("ADEA"),[4] and the Whistleblower Protection Act ("WPA").[5]
Pending are Stoyanov's motions for sanctions, leave to file a
surreply, and entry of final judgment and the Defendants' motion
to dismiss or for summary judgment. For the following reasons,
Stoyanov's motions will be denied, and the Defendants' motion
will be granted.

I.   Background[6]

     A.   Stoyanov's Employment

     Stoyanov was born in the U.S.S.R. on April 7, 1955, and
became a United States citizen. Compl. ¶ 8. He was a scientist
with the Naval Surface Warfare Center Carderock Division
("NSWCCD") in Bethesda, Maryland until his suspension on
February 2, 2007. *Id.* ¶ 6. This suit alleges discrimination
and retaliation against Stoyanov between spring 2003 and spring
2004.[7]

---

[4]   29 U.S.C. §§ 621 *et seq.*

[5]   5 U.S.C. §§ 1221 *et seq.*

[6]   For the motion for summary judgment, the Court will draw
inferences from the facts in the light most favorable to
Stoyanov, the non-moving party. *See Matsushita Elec. Indus. Co.
v. Zennith Radio Corp.*, 475 U.S. 574, 587 (1986).

[7]   The court rejected Stoyanov's previous discrimination and
retaliation claims based on allegations that Defendants: (1)
denied him sufficient time and resources to work on his EEO
complaints, (2) redirected 6.1 ILIR program work, and (3) denied
his request to be transferred from Code 72 back to Code 74. *See
Stoyanov v. Winter*, No. AMD-06-1244, 2008 WL 6722765, at *2 n.2
(D. Md. Aug. 11, 2008), *aff'd*, 305 Fed. Appx. 945 (4th Cir.
2009) [*Stoyanov II*]. Collateral estoppels bars re-litigation of

On April 15, 2002, the Navy announced an opening for an ND-5 interdisciplinary manager in the Stealth Systems Office (CAR-OC-0003).[8]  Roger Philip Ford Aff. 2, June 16, 2004.  This position had an emphasis on Total Ship Survivability ("TSS") and ship design integration but was open to all Code 70 employees. *Id*. at 3.  Stoyanov applied.  *Id*.  Roger Ford was the selecting official and convened a selection panel to conduct interviews and recommend a candidate.  *Id*. at 2-3.  The panel members-- Stuart Jessep, Jan Niemiec, and James Miller--independently reviewed the eight candidates' resumes and interviewed the top

---

these issues because Stoyanov has (1) previously raised identical arguments that were (2) actually decided as (3) a critical and necessary part of (4) a final judgment against him after (5) a full and fair opportunity for litigation of those issues.  *See Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006).  Stoyanov also refers to "discriminatory requirements" allegedly imposed on him by Crock in an October 16, 2003 email. Compl. ¶ 82(16, 19, 21, 22).  This email limited Stoyanov's use of government facilities to work on his EEO complaint during his annual leave.  *See* Def.'s Opp. Ex. 20. Stoyanov's complaint failed to explain how these requirements were "discriminatory."  His allegation that the time restrictions were "discriminatory" is insufficient to state a claim under Title VII; these claims will be dismissed.

[8]  Stoyanov applied for a vacancy for an ND-5 interdis-ciplinary manager (CAR-OC-0004).  Def.'s Reply Ex. 2; Pl.'s Opp. Ex. 37 at 1-2.  But Stoyanov was not certified for the position because he failed to indicate on his "additional data sheet" that he was a current Navy employee; when the Human Resource Service Center searched that field, he did not appear as a qualified candidate.  Def.'s Reply Ex. 2; Pl.'s Opp. Ex. 37 at 3.  Stoyanov was denied the position on March 20, 2003, and Crock was later selected.  Pl.'s Opp. Ex. 37 at 2.

two candidates.[9]  *Id.* at 3.  The panel selected Deborah
Nalchajian because she had program management experience and had
previously worked in TSS.[10]  Jessup Dep. 17:21-18:12.  Ford
selected Nalchajian on October 9, 2003.  Ford Aff. 3.

That month, Wilson and Shang decided to transfer Stoyanov
from Code 722 to Code 743[11] because Stoyanov's project was
ending,[12] and there had been funding cuts.  Paul Shang Dep. 13:2-
8, 15:15-22, 37:7-11, Feb. 10, 2005.  Stoyanov was one of
several employees[13] removed from Code 72 into a new position.[14]
*Id.* 13:3-8, 15:13-14.

---

[9]  Nalchajian and Krycia.  Ford Aff. 3.

[10]  Stoyanov was not among the top two candidates because he
lacked experience in project management and TSS. Stuart Jessup
Dep. 18:13-19:4, Jan. 6, 2005.

[11]  Code 722 is a position within Code 72, and Code 743 is a
position within Code 74.  NSWCCD "receives its working funds
from the work it performs for its sponsors," and each Code is
separately funded.  Def.'s Mot. 3.

[12]  At Code 722, Stoyanov's work was directly funded, but
time spent on his EEO complaint was charged to overhead.  Shang
Dep. 37:16-22.  An NSWCCD employee "can be funded in two ways:
overhead funding or direct funding.  Overhead funding comes out
of the Division's overhead.  Direct funding is derived from
specific work funded by a Division sponsor.  Senior Engineers
are expected to develop sponsors and acquire direct funding."
*Stoyanov v. Winter*, Nos. RDB-05-1567, RDB-05-1611, 2007 WL
2359771, at * 12 n.6 (D. Md. Aug. 15, 2007).

[13]  At least three other employees--Hansem Sue, Michael
Madden, and Lisa O'Neill--were removed from Code 72 from 2003 to
2004.  Shang Dep. 17:1-14, 37:3-6.

[14]  Shang testified that several employees were transferred
from Code 72 to Code 74, as "a lot of people in Code 72, because

Like all Code 743 professional staff, Stoyanov had to complete annual leave request slips,[15] submit a weekly status report to Crock,[16] and sign in and out at Building 3.[17]  Crock Dep. 40:1-15; 49:6-22.  Stoyanov's new branch manager, Crock, asked him to move from Building L to Building 3, where the other Code 743 employees worked.  Crock Dep. 26:7-14.  Stoyanov was required to sign in at Building 3 when he was working at Building L.[18]  Crock Dep. 42:3-44:13.

Before his transfer to Code 74, Stoyanov's old supervisor, Craun, asked him to complete a self-evaluation for use in his demo point evaluation[19] for FY 2003.  Matthew Ashby Craun Aff. 3, June 21, 2004.  Craun assigned Stoyanov one demo point based on

of funding cuts, didn't have money; and they could not find the right work, and as a result, [Shang] had to try to get work for a lot of people."  Shang Dep. 13:3-8.

[15]  Bruce Crock Dep. 34:13-35:13, February 10, 2005.

[16]  When Stoyanov requested a sample status report, Crock refused because he did not want Stoyanov to "answer a template" but instead to "submit his status reports in the format he saw [as] best."  Crock Dep. 50:21-51:15.

[17]  Crock Dep. 42:3-43:45:17.

[18]  Crock required this because he was "trying to get [Stoyanov] integrated into [the Code 743] branch's processes" and expected him to be moved over to Building 3 quickly.  Crock Dep. 43:18-22.

[19]  "Demo points" are bonus and continuing pay points that are awarded competitively at NSWCCD based on performance.  *Id*. at 2-3.  No more than four demo points are available to an employee, and an award of the maximum is rare.  Craun Aff. 3; Craun Dep. 18:2-6.

his assessment of Stoyanov's work relative to the other 24 people in his branch.[20]  Matthew Craun Dep. 12:22-13:4 Jan. 27, 2005.  Stoyanov appealed this decision to Craun[21] and then to Shang, but both denied his request for additional demo points.[22] Craun Dep. 14:15-15:3; Shang 26:7-12.

On October 31, 2003, Captain Behrle sent an email to Stoyanov, ordering him to stop "making baseless and insulting accusations" against NSWCCD employees.  Pl.'s Mot. Ex. 13 at 2.

On November 18, 2003, a vacancy was announced for an ND-5 interdisciplinary manager position in the Technology Transfer Office (CAR-03-0056).  *See* Def.'s Mot. Ex. 19 at 1.  Stoyanov was one of 15 applicants certified as qualified for this position.  *See* Def.'s Mot. Ex. 20 at 1, 3.  The selecting official was Corrado; he chose a five-member selection panel to independently evaluate the candidates.  Joseph A. Corrado Decl. 2, July 6, 2004.  Stoyanov was ranked among the bottom half of the candidates.  Def.'s Mot. Ex. 26 at 2-5.  The panel recommended and Corrado interviewed Joseph Teter, John Deiter,

---

[20]  Stoyanov was one of eight employees to whom Craun gave one demo point.  Craun Aff. 3.

[21]  Craun denied the appeal in December 2003 because Stoyanov did not provide any new information to justify a different award.  Craun Dep. 14:15-15:3.

[22]  Stoyanov believed that he was entitled to four demo points.  Craun Dep. 2-3.

and Garth Jensen.[23]  Corrado Decl. 2.  Deiter declined the

position.  *Id*.  Teter accepted the position.  *Id*.

On December 3, 2003, Stoyanov's "disrespectful" behavior

toward him and admonition by an EEOC Administrative judge for

"disrespectful, degrading and insulting conduct," prompted

Captain Behrle to refer Stoyanov to his supervisors for

"appropriate action under 5 C.F.R. Chapter 752."[24]  *Id*. at 1.

On December 11, 2003, Stoyanov moved from Building L to

Building 3.[25]  Compl. ¶ 82.  Thereafter, he was caught

---

[23]  The panel ranked Deiter first because of his
demonstrated "ability to manage a Technology Transfer Program
and coordinate a variety of tasks requiring interaction with
government and non-government activities."  Def.'s Mot. Ex. 26
at 1.  Jensen was also highly ranked because he "demonstrated an
understanding of the purpose of the Technology Transfer office,
and its need to be fully networked into the Division . . . [and]
his ability to collaborate and negotiate for the mutual benefit
of all involved."  *Id*.  Teter was among the top three selectees
because of his "understanding of the purpose of the Technology
Transfer office, the need for Technology Transfer to be
integrated into the Division, and the ability to work with
various activities for the mutual benefit of all involved."  *Id*.

[24]  5 C.F.R. 752 states the requirements for "adverse
actions" against civil service employees.  5 C.F.R. 752 (2009).
No action was taken against Stoyanov in response to Captain
Behrle's referral.

[25]  Stoyanov has alleged that the Defendants "created
intolerable working conditions that interfere with [his] work"
because the computer in his new office in Building 3 was removed
on the day of his move.  Compl. ¶ 82(26).  Crock recalls that
there was a computer in Stoyanov's new office, but it was
assigned to someone else.  Crock Dep. 62:3-6.  Computers were
supplied to Carderock by NMCI, and there "[wa]s not a clear
chain of responsibility for assignment."  *Id*. 60:3-61:10, 89:16-
20. Once a computer was requested, NMCI was responsible for

inaccurately signing in and out by Wilson[26] and Davies.[27]  Crock

Dep. 91:3-21.  Crock, Wilson, and Davies monitored Stoyanov to

confirm that he was falsifying his time records.  Davies Dep.

18:14-22.  During this period, Crock noticed Stoyanov's

"excessive use of sick leave on Mondays and Fridays."  Crock

Dep. 67:1-2.  Because of his timesheet inaccuracies and frequent

use of sick leave, Stoyanov was issued a "letter of

requirement," which required him to provide a doctor's note when

using sick leave.[28]  Crock Dep. 66:10-18, 91:10-16.

On March 18 and 19, 2004, job announcements for two program

manager positions were posted (CAR-04-0002 and CAR-04-0003).

Kathy Fowler Aff. ¶ 3, Jan. 12, 2005.  Several job series,

including Stoyanov's, were inadvertently omitted and later added

---

delivery, hook-up, and energizing the user's account.  *Id.*
89:20-90:2.  The request for an NMCI computer can take up to a
year to fill, and other Code 74 employees than Stoyanov were
without working NMCI computers.  Kevin Wilson Dep. 81:10-17,
Jan. 13, 2005.

[26]  Wilson "observed an illegal sign-in, sign-out where
[Stoyanov] signed in 20 or 25 minutes earlier than he actually
appeared in his office space."  Wilson Dep. 84:7-10.

[27]  "On at least four separate occasions, [Davies] witnessed
[Stoyanov] falsify his time card. . . [Davies] watched him sign
in . . . [and] later verified that he [had] signed in falsely."
John Davies, 19:21-20:4, Feb. 10, 2005.

[28]  According to Crock, other employees were not required to
provide a doctor's note for use of sick leave because they had
not shown "a pattern of sick leave usage which suggested abuse."
Crock Dep. 69:1-5.  There was no disciplinary action against
Stoyanov for his use of sick leave.

to the announcement.  *Id*. at 4.  Because additional approval was needed to re-advertise these positions, the two original announcements were cancelled; new vacancies that included the correct series were announced on August 18, 2004.  *Id*. ¶¶ 6-7.

B.   Procedural History

On March 19, 2002, Stoyanov and his brother filed an EEO complaint against the Navy, alleging national origin and age discrimination.  *Id*. ¶ 22.  Thereafter, Stoyanov filed additional EEO complaints, alleging further discrimination and retaliation for his EEO activity.  *Id*. ¶¶ 23, 29, 34.

After the EEOC Office of Federal Operations dismissed appeals on his first two complaints, Stoyanov received notice of his right to sue and timely filed suit.  *Id*. ¶¶ 26-27.  On April 26, 2007, the EEOC Office of Federal Operations denied Stoyanov's consolidated appeal of 11 discrimination complaints filed between 2003 and 2005.  Compl. Ex. 1 at 1-2.

On August 15, 2007, Judge Bennett entered judgment for the Defendants on the discrimination claims raised in Stoyanov's first EEO complaint and the related retaliation and WPA claims. *Stoyanov v. Winter*, Nos. RDB-05-1567, RDB-05-1611, 2007 WL 2359771 at *5-7 (D. Md. Aug. 15, 2007), *aff'd*, 266 Fed. Appx. 294 (4th Cir. 2008).[29]  On August 11, 2008, Judge Davis granted

---

[29]   Judge Bennett had previously granted in part and denied in part the Defendants' motion to dismiss in *Stoyanov v. Winter*,

summary judgment to the Defendants on similar claims raised in Stoyanov's second EEO complaint.  *Stoyanov v. Winter*, No. AMD-06-1244, 2008 WL 6722765 (D. Md. Aug. 11, 2008) [*Stoyanov II*].[30]

On July 6, 2007, Stoyanov filed this suit, alleging that six of his other EEO complaints had been improperly dismissed and denied appeal.  Compl. ¶¶ 34-35.[31]  On July 10, 2007, this suit was assigned to the inactive docket.  Paper No. 2.  On September 17, 2008, the court granted Stoyanov's motion to reactivate and reassign this suit to the active docket.  Paper No. 6.  On March 19, 2009, the Defendants filed a motion to dismiss or, in the alternative, for summary judgement.  Paper No. 28.  On July 27, 2009, Stoyanov filed a motion for sanctions against the Defendants.  Paper No. 39.  On September 4, 2009, Stoyanov filed a motion for "entry of final judgment and opposition to extension of time."  Paper No. 41.[32]  On October 9,

---

Nos. RDB-05-1567, RDB-05-1611, 2006 WL 5838450 (D. Md. July 25, 2006)[*Stoyanov I*].

[30] Stoyanov also filed claims with the Office of Special Counsel ("OSC"), alleging violations of the WPA.  *See Stoyanov v. Merit Sys. Protection Bd.*, 218 Fed. Appx. 988 (Fed. Cir. 2007), *cert. denied*, *Stoyanov v. Dept. of Navy*, 552 U.S. 887 (2007) [*Stoyanov III*].

[31] These six EEO complaints--Agency Nos.: 03-00167-012, 03-69223-003, 04-00167-008125, 04-00167-008298, 04-00167-009430, 04-00167-008004--allege discrimination and retaliation occurring from spring 2003 to spring 2004.

[32] Stoyanov captioned this as a "motion for final judgment" but only argued to preclude an extension of time for the

2009, Stoyanov filed a motion for additional sanctions and for leave to file a surreply.  Paper No. 44.

Here, Stoyanov has claimed: (1) national origin discrimination, (2) retaliation, (3) age discrimination, (4) WPA violations, (5) civil conspiracy, (6) aiding and abetting, (7) obstruction of justice, (8) abuse of administrative power,[33] (9) intentional infliction of emotional distress ("IIED"), (10) fraud and misrepresentation, (11) obstruction of justice by Caron, (12) malicious abuse of process, (13) First Amendment violations, and (14) procedural and substantive due process violations.  As the claims raised in Stoyanov's first and second EEO complaints have been adjudicated, the Court will only address the new factual and legal arguments raised in his subsequent EEO complaints.[34]

---

Defendants to file a reply.  *See* Paper No. 39 at 2-3.  The court granted the Defendants' motion for extension of time, Paper No. 42; Stoyanov's request to enter judgment without extending time for the Defendants' reply is moot and will be denied.

[33]   The Court will assume, without deciding, that this claim states a tort claim.

[34]   Judge Davis similarly relied upon the prior opinions and orders by Judge Bennett in Stoyanov's earlier cases.  *Stoyanov II*, 2008 WL 6722765 at *2.

II.   Analysis

    A.   Defendants' Motion for Summary Judgment

        1.   Standard of Review

            a.   Exhaustion of Administrative Remedies and Rule 12(h)(3)

The failure to exhaust administrative remedies deprives the federal courts of subject matter jurisdiction over a Title VII, ADEA, or WPA claim.[35]  Under Rule 12(h)(3), "[i]f the court determines at any time that it lacks subject matter juris-diction, the court *must* dismiss the action."  Fed. R. Civ. P. 12(h)(3) (emphasis added).

        b.   Rule 56(c)

Under Rule 56(c), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A dispute about a material fact is genuine "if the evidence is

---

[35]   *See Jones v. Calvert Group Limited*, 551 F.3d 297, 300-01 (4th Cir. 2009); *Floyd v. U.S. Dept. of Homeland Sec.*, No. RDB-09-0735, 2009 WL 3614830 at *3; *Stoyanov I*, 2007 WL 2359771 at *5.

such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in h[is] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court also "must abide by the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003). "[C]ourts must take special care when considering a motion for summary judgment in a discrimination case because motive is often the critical issue, [but] summary judgment disposition remains appropriate if the plaintiff cannot prevail as a matter of law." *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996).

2.   Counts (1)-(3): Title VII & ADEA Claims[36]

As noted by previous courts, Stoyanov's case is about employment discrimination based on his national origin and age and retaliation for his protected activity. *Stoyanov II*, 2008

---

[36]   Because there is an extensive record and neither party suggests that additional discovery is needed, these claims will be addressed under Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 12(d) (When "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

WL 6722765, at *2.  Stoyanov has alleged failure to promote,
discrimination, and retaliation claims.  Compl. ¶ 82.

     Under Title VII, it is unlawful "for an employer to fail or
refuse to hire . . . or otherwise discriminate against any
individual with respect to his compensation, terms, conditions,
or privileges of employment because of" that person's national
origin.  42 U.S.C. § 2000e-2(a)(1).  An employer is also
prohibited from retaliating against an employee because he has
opposed a practice made unlawful under Title VII.  42 U.S.C.A. §
2000e-3(a).  Age discrimination and retaliation are prohibited
by the ADEA.  29 U.S.C. §§ 623(a)(1) & (d).  As Stoyanov has
presented no direct evidence of discrimination or retaliation,[37]
he must establish his claims by circumstantial evidence.[38]

     The *McDonnell Douglas* analysis may be used to show
discrimination and retaliation by circumstantial evidence in
Title VII and ADEA cases.  *See E.E.O.C. v. Warfield-Rohr Casket
Co., Inc.*, 364 F.3d 160, 163 (4th Cir. 2004).  Stoyanov must
first state a prima facie case.  *Hill v. Lockheed Martin
Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004).

---

[37]  Stoyanov has argued that an email from James King dated
March 2, 2000, is direct evidence of age discrimination.  Pl.'s
Opp. 25 n.5.  But that argument was rejected in *Stoyanov I*, 2006
WL 5838450 at *10.

[38]  A plaintiff may establish a prima facie case of
discrimination by direct or circumstantial evidence.  *See Desert
Palace, Inc. v. Costa*, 539 U.S. 90, 99-101 (2003); *Worden v.
SunTrust Banks, Inc.*, 549 F.3d 334, 342 (4th Cir. 2008).

a.    Failure to Promote Claims

To establish a *prima facie* case of discriminatory failure to promote, Stoyanov must show that (1) he is a member of a protected class, (2) the Defendants had an open position for which he applied or sought to apply, (3) he was qualified for the position, and (4) he was rejected under circumstances giving rise to an inference of unlawful discrimination.  *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959-60 (4th Cir. 1996).

Stoyanov has challenged his non-selection for three ND-5 interdisciplinary manager vacancies filled by other applicants: (1) Crock was promoted to CAR-OC-0004 position in March 2003;[39] (2) Nalchajian was promoted to CAR-OC-0003 in October 2003; (3) Teter was promoted to CAR-03-0056 in 2004.  The Defendants concede that Stoyanov has met the first three elements of his *prima facie* case but argue that he has not provided evidence giving rise to an inference of age or national origin discrimination.  Def.'s Mot. 18, 31; Def.'s Reply 5.  Here, Stoyanov has not produced evidence that he suffered age or

---

[39]  The Defendants assert that *res judicata* bars this claim because Judge Davis considered and rejected this argument in *Stoyanov II*.  Def.'s Reply 5.  But there is no reference to vacancy announcement CAR-OC-0004 in that opinion; thus, the claim will be considered here.

national origin discrimination.  Stoyanov's mere allegations and conspiracy theories do not support his discrimination claims.[40]

Had Stoyanov established his *prima facie* case, the Defendants' non-discriminatory reasons for not promoting him would remain.  *Stoyanov II* held that Stoyanov's "fail[ure] to indicate an interest in [a vacancy] in the proper manner" precluded his recovery.  2008 WL 6722765, at *2 n.3.  Here, the Defendants have evidence that Stoyanov was not considered for the CAR-OC-0004 position because he did not indicate that he was a current Navy employee in the correct field; when the RESUMIX operator searched the database by that field, his application did not appear.  Stoyanov argues that the Defendants should have reviewed the resume attached to his application, which made it clear that he was a Navy employee.  *See* Pl.'s Opp. 36-37.

The federal courts "do[] not sit as a kind of super-personnel department weighing the prudence of employment decisions made by [employers] charged with employment discrimination."  *DeJarnett v. Corning Inc*., 133 F.3d 293, 299 (4th Cir. 1998).  The Defendants chose to use field selection as a mechanism for certifying candidates, and there is no evidence that this method was a pretext for discrimination.  Accordingly,

---

[40]   *See Goldberg v. B. Green and Co., Inc*., 836 F.2d 845, 848 (4th Cir. 1988)("[Plaintiff's] naked opinion, without more, is not enough to establish a *prima facie* case of age discrimination.").

Stoyanov has failed to show that the Defendants' reason for his non-selection was pretextual.

Stoyanov argues that he was better qualified candidate than Nalchajian and Teter.  Pl.'s Opp. 33, 38.  "Job performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision." *Evans*, 80 F.3d at 960.  The Defendants assert that Nalchajian was selected for the CAR-OC-0003 position because she had program management and TSS experience that Stoyanov lacked. Similarly, Teter was selected for the CAR-03-0056 position because he understood the need for the integration of technology transfer into the Division and worked well with others. Nalchajian and Teter were top choices of the panels that recommended their selection; Stoyanov was not.

Stoyanov has no evidence that the selection processes were biased or that he was a more qualified candidate; thus, he has not shown that the Defendants' stated reasons for his non-selection were a pretext for discrimination.[41]

> b.   Retaliation and Discrimination Claims

Stoyanov has asserted that the Defendants discriminated and retaliated against him by: (1) transferring him from Code 722 to

---

[41] *Evans*, 80 F.3d at 960. ("[Plaintiff's] unsubstantiated allegations and bald assertions concerning [his] own qualifications and the shortcomings of [his] co-workers" failed to establish that he was the better qualified candidate).

Code 743 in October 2003; (2) requiring him to complete annual
leave request slips, submit a weekly status report, and sign in
and out at Building 3;[42] (3) giving him only one demo point for
FY 2003; (4) threatening disciplinary action under 5 C.F.R. 752;
(5) removing the NMCI computer from his office in Building 3;
(6) requiring a doctor's note when he used sick leave; (7)
following him while he was at work in Building 3; and (8)
excluding his job series from vacancy announcements for two
program manager positions (CAR-04-0002 and CAR-04-0003).[43]

Stoyanov may make a *prima facie* case of retaliation by
showing (1) he engaged in a protected activity,[44] (2) his
employer took an adverse employment action against him,[45] and (3)

---

[42] Stoyanov has also alleged that the Defendants
discriminated and retaliated when they refused to provide him
with a sample status report and required him to sign in at
Building 3 while he was still working at Building L.

[43] Stoyanov argues that these allegations show age and
national origin discrimination and retaliation. *See* Compl. ¶
82.

[44] To show protected activity, Stoyanov need only show that
he "opposed an unlawful employment practice which he reasonably
believed had occurred or was occurring." *Peters v. Jenney*, 327
F.3d 307, 320 (4th Cir. 2003).

[45] An adverse employment action is shown when "a reasonable
employee would have found the challenged action materially
adverse, which . . . means it well might have dissuaded a
reasonable worker from making or supporting a charge of
discrimination." *Burlington Northern & Santa Fe Ry. Co. v.
White*, 548 U.S. 53, 68 (2006)(internal quotations omitted).
Whether an employer's action is materially adverse will "depend
upon the particular circumstances," and the "[c]ontext matters."

a causal connection between the protected activity and the adverse action. *Honor v. Booz-Allen & Hamilton*, Inc., 383 F.3d 180, 188 (4th Cir. 2004)(*citing Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004)).  To show a *prima facie* case of discrimination based on national origin or the ADEA, he must show: (1) he is a member of a protected class, (2) his job performance was satisfactory, (3) he was subjected to an adverse employment action, and (4) similarly situated employees outside his class received favorable treatment. *White v. BFI Waste Services, LLC*, 375 F.3d 288, 295 (4th Cir. 2004)(Title VII); *see also Hill*, 354 F.3d at 285 (ADEA).

The Court will assume that Stoyanov has met his initial burden under the *McDonnell Douglas* analysis.

The Defendants have explained that (1) Stoyanov was transferred along with several other Code 722 employees because his project ended and there were funding cuts; (2) the leave request, status report, and sign-in policies were applicable to all Code 743 employees;[46] (3) Stoyanov--like seven other

_____

*Id*. at 69.  "[P]etty slights, minor annoyances, and simple lack of good manners" are insufficient to support a claim of retaliation.  *Id*. at 68.  The Supreme Court has held that "Title VII's substantive provision and its antiretaliation provision are not coterminous.  The scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harms."  *Id*. at 67.

[46]  The Defendants have also explained that Stoyanov was refused a sample status report because Crock wanted him to use

employees--was awarded one demo point based on an objective comparison of his performance with that of others in his division;[47] (4) the threat of discipline was a response to Stoyanov's disrespectful behavior; (5) it was NMCI's responsibility to provide computers and other Code 74 employees also lacked computers; (6) Stoyanov was required to provide a doctor's note because he engaged in a "pattern of sick leave usage which suggested abuse;" (7) Stoyanov was monitored at Building 3 because he had falsely reported his time entries; and (8) the omission of Stoyanov's job series from the program manager vacancy announcements was unintentional, applied to all employees in his series, and was later corrected.

"An employer may enforce generally applicable employment policies against its employees without creating a cause of action for retaliation." *Wells v. Gates*, No. 08-1358, 2009 WL 1991212 at *5.  An employer may also measure an employee's performance and take adverse actions based on that assessment. *Evans*, 80 F.3d at 960.  "Title VII is not a vehicle for substituting the judgment of a court for that of the employer,"

_____

his own format instead of answering a template, and he was required to sign in at Building 3 while still working at Building L because Crock wanted to integrate him into his new division.

[47]   Stoyanov's receipt of one demo point was upheld on appeal to his superiors because he failed to provide any information to justify additional points.  Craun Dep. 14:15-15:3.

*Jiminez v. Mary Washington College,* 57 F.3d 369, 377 (4th Cir. 1995), and "when an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not [the Court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *DeJarnette*, 133 F.3d at 299.

Here, Stoyanov has failed to show that the reasons proffered by the Defendants are a pretext for discrimination or retaliation.  His mere allegations and self-assessment of his performance[48] do not satisfy his burden of proof.  Because the undisputed evidence[49] shows legitimate, nondiscriminatory reasons for their actions, summary judgment will be granted to the Defendants on these claims.

        3.   Count (4): WPA Claims

Stoyanov asserts that the Defendants violated the WPA by retaliating against him for disclosing "perjuries, fraud, violations of [f]ederal and civil service laws, conspiracy and interference with . . . [his] employment."  Pl.'s Opp. 29.  The

_____

[48]   "It is the perception of the decision maker which is relevant not the self-assessment of the plaintiff." *Evans*, 80 F.3d at 960-61 (internal quotation omitted).

[49]   Stoyanov's unsubstantiated allegations of "perjury" and "fabrications" by various Defendants do not create a question of fact. *See, e.g.*, Pl.'s Opp. 28 (alleging "perjuries" by Jebsen Craun, McGrath, Fowler, and Wilson), 33 (alleging "fabrications of unfairly rat[ing] Plaintiff's application 'one of the lowest'").

Defendants argue that Stoyanov's WPA claims are barred because he failed to exhaust his administrative remedies.[50]

WPA claims must be dismissed if a plaintiff has failed to exhaust his administrative remedies. *Floyd*, 2009 WL 3614830 at *3; *Stoyanov I*, 2007 WL 2359771 at *5.  In a "mixed case" that asserts WPA and discrimination claims, a plaintiff may exhaust his administrative remedies either by: (1) seeking administrative relief with the Merit Systems Protection Board ("MSPB"), or (2) filing a complaint with the applicable agency EEO Office. *See McAdams v. Reno*, 64 F.3d 1137, 1141 (8th Cir. 1995); *Floyd*, 2009 WL 3614830 at *3.[51]  The agency chosen must address the discrimination and civil service issues raised.  *McAdams*, 64 F.3d at 1141.  Here, Stoyanov did not seek administrative relief with the MSPB or address his WPA claims in his EEO complaints.[52]

---

[50]   Stoyanov submitted WPA claims to the Office of Special Counsel ("OSC") in 2005.  Def.'s Mot. 11.  The OSC refused to pursue his WPA claims, and Stoyanov appealed that decision up to the Federal Circuit, which held that his complaints related only to EEO activities and thus were outside the WPA.  *Stoyanov III* 218 Fed. Appx. at 993.  Stoyanov may not reassert those WPA claims here.

[51]   "A mixed case may be filed as a complaint with the agency's EEO department or as an appeal to the MSPB, but not both."  *McAdams*, 64 F.3d at 1141; 5 U.S.C. § 7702 (2006).

[52]   Stoyanov alleges that he has exhausted his administrative remedies for the claims raised in six EEO complaints which were dismissed and denied appeal by the EEOC Office of Federal Operations.  Compl. ¶ 34, Ex. 1 at 2.  But he has only produced three of these complaints.  *See* Pl.'s Opp. Exs. 3 (No. 04-00167-08125), 16 (No. 04-00167-09430), 18 (No. 04-00167-08004).  Because administrative exhaustion of a WPA

To state a claim under the WPA, a plaintiff must allege that: (1) the plaintiff engaged in whistleblowing by making a protected disclosure under 5 U.S.C. § 2303(b)(8); and (2) the acting official has and used his authority to take, recommend, or approve a personnel action against the plaintiff because of the plaintiff's protected disclosure.[53]   As EEO activities are within 5 U.S.C. § 2302(b)(1) & (b)(9), they are beyond the WPA. *Stoyanov II*, 218 Fed. Appx. at 992-93; *Spruill v. Merit Sys. Protection Bd.*, 978 F.2d 679, 690-91 (Fed. Cir. 1992).[54]   Neither retaliation for filing an EEO complaint nor the underlying discrimination is protected whistleblowing under the WPA.

---

claim is required for subject matter jurisdiction, the plaintiff bears the burden of proof on this issue.  *See Limardo v. Barreto*, No. 04-1343, 2006 WL 2795554 at *15 (D. Puerto Rico Sept. 26 2006)(court lacked subject matter jurisdiction because plaintiff failed to administratively exhaust his WPA claim); *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300-01 (4th Cir. 2009)(no subject matter jurisdiction where plaintiff failed to exhaust administrative remedies on Title VII and ADEA claims); *but see Young v. Nat'l Ctr. For Health Serv. Research*, 828 F.2d 235, (4th Cir. 1987)(exhaustion is an affirmative defense that was not considered because the defendant failed to produce the administrative complaint).  Here, the Court will consider only the claims raised in the three complaints provided by Stoyanov.

[53]  *See Floyd*, 2009 WL 3614830 at *3; *Stoyanov II*, 218 Fed. Appx. at 990; *see also Coons v. Sec'y of the U.S. Dep't of the Treasury*, 383 F.3d 879, 888 (9th Cir. 2004).

[54]  "[A]llegations of EEO violations under 5 U.S.C. § 2302(b)(1) and (b)(9) do not qualify as whistleblowing allegations."  *Stoyanov II*, 218 Fed. Appx. at 992.

Stoyanov's EEO complaints allege that the Defendants discriminated against him because of his national origin and age and retaliated against him for filing EEO complaints.[55]   Because these activities are not protected by the WPA, Stoyanov has failed to exhaust his administrative remedies, and this court lacks subject matter jurisdiction over the WPA claims raised here.

   4.   Counts (5)-(12): Tort Claims

In *Stoyanov v. Winter*, Stoyanov asserted Title VII, ADEA, tort, and human rights claims based on allegations of employment discrimination.   *Stoyanov I*, 2006 WL 5838450 at *6-7.   The Court dismissed his intentional tort claims for lack of subject matter jurisdiction based on sovereign immunity.[56]   It then dismissed

---

[55]   *See* Pl.'s Opp. Ex. 3 at 3, Ex. 16 at 2-3, Ex. 18 at 2 (alleging a pattern of discrimination and reprisal because of [his] national origin, age, and participation in EEO activity).

[56]   Absent a waiver, the United States and its officers are immune from suit.   *Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994).   The Federal Tort Claims Act ("FTCA") is a limited waiver of sovereign immunity but excludes claims "arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."   28 U.S.C. § 2680(h) (2006).   Accordingly, the Court dismissed Stoyanov's claims for intentional infliction of emotional distress, malicious abuse of process, and fraud and misrepresentation for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).   *Stoyanov I*, 2007 WL 5838450 at *6. The intentional infliction of emotional distress claim is precluded by Stoyanov's Title VII and the ADEA actions.   *See infra* note 56 and accompanying text.

his remaining tort and human rights claims[57] because "[t]he gravamen of these causes of action [was] allegations of job-related discrimination based on national origin, retaliation, and age," and the "exclusive remedy for such claims [was] Title VII and the ADEA." [58]

Here, Stoyanov has asserted Title VII, ADEA, and other claims, which are based on allegations of national origin and age discrimination and retaliation by his employer. Because these claims are about employment discrimination under Title VII and the ADEA, the tort claims in Counts (5)-(12)[59] will be dismissed for lack of jurisdiction.

---

[57]  For failure to state a claim under Fed. R. Civ. P. 12(b)(6), the Court dismissed Stoyanov's claims for: violation of human rights laws, conspiracy to discriminate, aiding and abetting in discriminatory conduct, obstruction of process, and abuse of administrative power.  *Stoyanov I*, 2007 WL 5838450 at *6-7.

[58]  *Id*. at *7; *see also White v. Coates*, 1999 WL 1489198 at *2 (D. Md. December 16, 1999) ("federal employees are barred from bringing non-Title VII causes of action 'when the gravamen of the complaint arises from employment discrimination'") (*quoting Baird v. Haith*, 724 F. Supp. 367, 379 (D. Md. 1988)). Although the preclusive effect of Title VII and the ADEA would have extended to all Stoyanov's tort claims, *Stoyanov I* dismissed the intentional torts on sovereign immunity grounds. *Id*. at *6.

[59]  These are identical to claims previously filed by Stoyanov and dismissed for lack of jurisdiction.  *See Stoyanov I*, 2007 WL 5838450 at *5-7.

5.   Counts (13) & (14):  Constitutional Claims

Stoyanov claims damages for violations of his First Amendment speech and Fourteenth Amendment due process rights under § 1983.[60]  Because § 1983 requires state action and Stoyanov's claims only implicate federal actors, he has no remedy under that statute.[61]  There is a limited "implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights" recognized in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  *Iqbal*, 129 S. Ct. at 1948 (internal quotation omitted).

When available, a *Bivens* action "is the federal analog to suits brought against state officials under [§ 1983]."  *Id.* (internal quotation omitted).  *Bivens* actions are inappropriate "[w]hen the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations."  *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988).

---

[60]   42 U.S.C. § 1983 (2006).

[61]   To succeed on a § 1983 claim, a plaintiff must show "(1) deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law." *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).  § 1983 does not reach "actions of the Federal Government and its officers." *District of Columbia v. Carter*, 409 U.S. 418, 424 (1973).

Federal personnel matters are governed by the Civil Service Reform Act of 1978 ("CRSA"),[62] a "comprehensive set of procedural and substantive provisions governing the rights of federal employees." *Zimbelman v. Savage*, 228 F.3d 367, 370 (4th Cir. 2000). Because the CRSA provides an exclusive administrative and judicial remedy for federal employment actions, a *Bivens* action is unavailable in such cases.[63] Stoyanov could have pursued damages for the alleged violations of his constitutional rights under the CRSA.

A plaintiff must exhaust his administrative remedies before bringing a CRSA claim in federal court. *See Bonds v. Leavitt*, --F. Supp. 2d --, 2009 WL 2525469 at *32 (D. Md. Aug. 13, 2009). Here, Stoyanov has not pursued his administrative remedies for his constitutional claims under the CRSA, and he may not raise those issues here.[64]

---

[62]   5 U.S.C. § 1101 *et seq*.  The process of administrative review through the EEOC and MSPB are part of this comprehensive scheme.

[63]   *See Bush v. Lucas*, 462 U.S. 367, (1983)(federal employment is a "special factor" that makes a *Bivens* remedy unavailable); *Zimbelman*, 228 F.3d at 370 (CRSA precludes a *Bivens* action for constitutional claims arising from a federal employment relationship); *Pinar v. Dole*, 747 F.2d 910, 913 ("Congress clearly intended the CSRA to be the exclusive remedy for federal employees").

[64]   *Id.* at *40 (federal employee failed to exhaust administrative remedies with respect to CSRA claim because she did not raise then in her EEOC complaint and her Title VII and WPA claims did not give notice of her CSRA claims).  A "consis-

B.   Stoyanov's Motions for Sanctions

Under Rule 11(b), an attorney or unrepresented party must certify to the court that to be best of his "knowledge, information, and belief" formed after a reasonable inquiry: (1) the action is not being presented for an improper purpose, (2) the legal contentions are warranted by law, (3) the facts alleged have or will have evidentiary support, and (4) denials of facts are based on evidence or lack on knowledge.  *See* Fed. R. Civ. P. 11(b).  Rule 11(c) allows a party to be sanctioned if he violates Part (b).  The "safe harbor" provision in Rule 11 requires a party seeking sanctions to serve the Rule 11 motion on the opposing party at least 21 days before filing the motion with the court; this provides an opportunity for withdrawal or correction of the challenged pleading.  Fed. R. Civ. P. 11(c)(2).

In his first motion for sanctions under Rule 11, Stoyanov alleged that he met the "safe harbor" requirements by providing the Defendants with a draft of that motion before filing it with the court.  *See* Pl.'s Mot. Sanctions 2.  Because the Defendants

---

tent and unambiguous line of cases reject[s] the contention that constitutional claims should be exempt from exhaustion require-ments."  *Nationsbank Corp. v. Herman*, 174 F.3d 424, 429 (4th Cir. 1999)

failed to respond to either of the two motions for sanctions, they have conceded that these procedural requirements were met.[65]

Stoyanov argues that the Defendants "misrepresented the facts," and he provides examples of sworn statements "inconsistent" with the Defendants' briefs.  *See* Pl.'s Mot. Sanctions 4-18.  He has not shown factual errors or omissions but merely disagrees with the Defendants' characterization of the facts supporting their legal arguments.  He has not established a Rule 11(b) violation.  Similarly, Stoyanov's references to trivial difference in job titles and his characterization of the facts supporting his legal conclusions do not establish Rule 11(b) violations.  Stoyanov's motions for sanctions will be denied.

C.   Stoyanov's Motion to File a Surreply

Under Local Rule 105.2(a), parties are not generally permitted to file surreply memorandum.  Because Stoyanov has failed to show a need for his proposed surreply, his motion will be denied.

III. Conclusion

For the reasons stated above, Stoyanov's motions for final judgment, for sanctions, and to file a surreply will be denied,

---

[65] *See Brickwood Contractors, Inc. v. Datanet Engineering, Inc.*, 369 F.3d 385, 395 (4th Cir. 2004)("[T]he issue of whether a party has complied with the [safe-harbor requirements] is subject to forfeiture if not timely raised.").

and the Defendants' motion to dismiss or for summary judgment

will be granted.


December 8 2009                    _____/s/_____
Date                               William D. Quarles, Jr.
                                   United States District Judge